252 So.2d 117

**Russell Castle HOOD**

v.

**STATE.**

**6 Div. 15.**

Court of Criminal Appeals of Alabama.

Aug. 17, 1971.

Charles Allison, Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

PER CURIAM.

This is an appeal from a conviction for robbery. Appellant was sentenced to ten years and one day in the penitentiary.

The appellant filed a motion to suppress evidence of identification by the victim, Jasper Daniel Clark, on the grounds that the identification of the accused at a police lineup and by photographs was illegal. The motion to suppress the evidence was overruled.

The appellant was identified in a police lineup in Jacksonville, Florida, by Mr. Clark. Appellant contends and insists that he was without counsel at this particular time, which he states was a critical stage of the proceedings.

The transcript of the testimony taken on the motion to suppress records the following:

"Q. * * * Mr. Hood, I believe you were arrested in Jacksonville, Florida, on this case?

"A. Yes, sir.

"Q. All right, sir. At the time or any time soon after the arrest, were you provided with legal counsel?

"A. Well, at the time they held a line-up, they called a Public Defender, I believe they called it, over to the jail, which was a colored man. I don't remember his name, and at that time, I was still a Federal prisoner. And he advised me not to stand the line-up, and I told the arresting officers that he advised me —He didn't want me to stand the line-up.

"Q. Did he act as your counsel, did he discuss and advise pending line-ups or identification procedures with you?

"A. Yes, sir, at that time he did, yes, sir.

"Q. Was a line-up held that day?

"A. No, sir.

"Q. All right. Was a line-up held at a later date?

"A. Yes, sir.

"Q. Was this counsel present at that time?

"A. No, sir.

"Q. Did he—Was he called to come and counsel with you prior to this second line-up?

"A. No, sir.

"Q. He was not?

"A. No, sir.

"Q. Did you see him at all from the time he first advised you not to be in the line-up until the line-up was held?

"A. No, sir.

"Q. Was he present in the Courtroom on the time and day of the line-up?

"A. No, sir.

"Q. All right. Do you know if—Or I'll say, did any other counsel appear and counsel with you concerning the line-up that was proposed to be made?

"A. Well, that I can't answer for sure; I don't know. There was a guy came up after the line-up was held and told me he was from the Public Defender's office, and that the man had picked me out of the line-up.

"Q. He did not counsel with you prior to that time and advise you of any rights?

"A. No, sir.

"Q. And did anyone, any official—anyone from the State of Florida or Alabama, before this line-up that was held that day—did anyone advise you of your constitutional rights?

"A. I don't remember it."

Mr. Clark, the victim of the robbery stated:

"A. Well, we had two police detectives down there, but they wouldn't let them go in the room with us. And these two public defenders got me and carried me in the room, the public defenders, and there was a detective from down there.

"Q. Mr. Clark, just a minute: What do you mean by a public defender?

"A. That's what they said, public defender, representing him.

"Q. They told you that?

"A. Sure, yes, sir."

■ According to the state's evidence the lineup was held the week following the robbery. The robbery took place in the day time and Mr. Clark was able to get a close look at defendant's face while defendant was pointing a pistol at him and waiting for Mr. Clark to gather the money from the safe, Mr. Clark stated he was looking straight at defendant's face and

would never forget him, and that he recognized defendant the moment he saw him in the lineup. There was no evidence tending to show any prompting of the witness as to who was in the lineup. The evidence also shows that the victim, Clark was shown several photographs at his store, and there was no suggestion as to who the accused was or that anyone had been apprehended and was under arrest in the State of Florida. We find no violation of appellant's constitutional rights in this connection. Grace v. State, 44 Ala.App. 682, 220 So.2d 259; State of Louisiana v. Allen, 251 La. 237, 203 So.2d 705; Robinson v. State, 45 Ala.App. 236, 228 So.2d 850; Parker v. State, 45 Ala.App. 335, 230 So.2d 247; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

Mr. Clark reported to the police that when defendant left the store he got into a blue 1960 model Chevrolet automobile with two men and gave the tag number of the car approximately thirty minutes later the car was located at the rear of the Skyland Drug Store. A woman told the police she had seen three men abandon the blue car and leave in a yellow car. She did not know either of the men and knew nothing about a robbery having taken place. She simply saw three men leave the blue car in a parking lot and drive away in a different car. She did not give any physical characteristics of the men nor the tag number, make or model of the yellow car.

The defendant sought to elicit from Detective Russell the name of the woman, but the court refused to compel the witness to identify her.

 It is well established that disclosure of the identity of an informer is not ordinarily in the public interest, except where needful to show the innocence of the accused. Parsons v. State, 251 Ala. 467, 38 So.2d 209; Dixon v. State, 39 Ala.App. 575, 105 So.2d 354.

While the woman here was not an informer in the legal or ordinary sense,

under the evidence the interests of appellant would not have been served by requiring the police to disclose her identity.

We have carefully searched the record and find no reversible error. The judgment is affirmed.

The foregoing opinion was prepared by K. J. GRIFFITH, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.