TAYLOR, Judge.
The appellant, C.M.B., a juvenile, was charged in a delinquency complaint with the murder of 14-year-old Pavan Pragada. Upon motion of the State, a hearing was held, and the juvenile was ordered transferred to the Circuit Court for Jefferson County to be tried as an adult. He appeals the granting of this motion.
The evidence at the transfer hearing tended to show that the victim’s sister found the deceased victim lying face down *697 on his bed in their home on November 9, 1990. The victim had been shot in the head with a small caliber handgun. The victim and the appellant had been friends for several months before the murder. The victim’s mother then accused the appellant, C.M.B., of stealing money from her purse, and told him to stay away from her son.
Two days before the murder, the victim had fractured his foot and it had been placed in a cast. The next day the appellant came to visit the victim, they had a disagreement, and the appellant hit the victim on the head with a stick. On the day of the murder, the victim did not go to school because of his foot. His mother saw him that morning and at lunch. When the victim’s sister came home from school, the apartment was covered with blood. She went to look for her brother and found him in his room with his head covered in blood. He died that evening as a result of the gunshot wound to his head.
I
The appellant argues that the order transferring him to the Circuit Court for Jefferson County was deficient in that it did not specifically state that the trial court considered all of the relevant factors in § 12-15-34(d), Code of Alabama 1975, before ordering that the case be transferred. That section states:
“(d) Evidence of the following and other relevant factors shall be considered in determining whether the motion shall be granted:
“(1) The nature of the present alleged offense;
“(2) The extent and nature of the child’s prior delinquency record;
“(3) The nature of past treatment efforts and the nature of the child’s response to such efforts;
“(4) Demeanor;
“(5) The extent and nature of the child’s physical and mental maturity; and
“(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline.”
After a review of the order, we must agree. The order to transfer stated:
“The Court having heard testimony and received evidence as a part of the probable cause portion of this hearing and regarding Defendant’s Motion to Suppress and having denied said motion;
[[Image here]]
“The Court having reviewed the records and exhibits admitted in evidence, including the orders of this court, finds that said child has been referred to this court on one prior occasion.
“The Court having considered the relevant factors contained in Section 12-15-34, Code of Alabama, 1975, and having heard the sworn testimony of Edward Braden, Tommy Stewart and Rod Walker as to disposition, finds that said child is not eommittable to an institution or agency for the mentally retarded or mentally ill; that the best interests of the child and public would be to grant the Motion to Transfer....”
If a court’s order recites that it has considered all of the factors then the order will comply with the requirement of § 12-15-34(d). See Slaton v. State, 555 So.2d 814 (Ala.1989). We cannot say with certainty from reading the juvenile court’s order that the court in fact considered all the factors as required by 12-15-34(d), Code of Alabama 1975. Thus, we have no choice but to remand this case to the Juvenile Court for Jefferson County so that that court can state whether it considered all of the factors described in § 12-15-34(d).
In the interest of judicial economy, we will address the remaining issues which appellant presents on appeal.
II
The appellant first contends that his arrest was illegal and that any evidence obtained as a result of his arrest should have been suppressed. Specifically, the appellant contends that there was no probable cause to arrest him without a warrant. The admissibility of the confession hinges on the question of whether the appellant’s *698 arrest was lawful. We hold that the juvenile court did not err in finding sufficient probable cause to arrest the appellant.
This court in Sterling v. State, 421 So.2d 1375 (Ala.Cr.App.1982), upheld a warrant-less arrest, stating:
“Section 15-10-3, Code of Alabama, is the governing statute for warrantless arrests. This statute clearly allows an officer to make a warrantless arrest if he had reasonable and probable cause to effect that arrest. Whether the warrant-less arrest was lawful depends upon whether ‘at the moment the arrest was made, the officers had probable cause to make it.’ White v. State, 45 Ala.App. 1, 221 So.2d 117 (1969).”
Sterling, 421 So.2d at 1379.
Probable cause has been equated to reasonable cause. See Daniels v. State, 534 So.2d 628 (Ala.Cr.App.1985), aff’d, 534 So.2d 656 (Ala.1886), cert. denied, 479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987).
“The determination of what amounts to probable cause is based on a ‘reasonable man’ standard. ‘Probable cause exists where “the facts and circumstances within their [the officers’] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that” an offense has been or is being committed.’ ”
State v. Hanson, 480 So.2d 620, 623 (Ala.Cr.App.1985). See also Swicegood v. State, 448 So.2d 433, 434 (Ala.Cr.App.1983).
“The arresting officer need not have evidence before him that would support a conviction for the offense. He need only have knowledge of facts and circumstances which are reasonably trustworthy and which would lead a prudent man to believe that the accused had committed the offense.”
Blanco v. State, 515 So.2d 115, 119 (Ala.Cr.App.1987). “Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.” Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). “The question of probable cause must be determined by an examination of the circumstances surrounding the arrest.” Daniels v. State, 534 So.2d at 651. See also Blanco.
In the instant case, at the time of the appellant’s arrest, the police had the following information:
1. The victim, a 14-year-old child, had been shot with a small caliber handgun.
2. The appellant and the victim had “hung around” each other before the murder.
3. The victim’s sister told police that her brother was afraid of the appellant and that the appellant had threatened her brother.
4. The victim’s sister told police that the appellant had hit her brother on the head with a “club-like” instrument the day before his death.
5. The victim’s sister saw the appellant near their apartment on the day of the murder.
6. The appellant had been seen with a gun the day before the murder.
7. On the day of the murder, the appellant did not attend school.
This is sufficient probable cause to believe that the appellant had committed the offense. However, the inquiry does not end there. The police entered the appellant’s house without a warrant to effect the arrest. Police knocked on the appellant’s door and identified themselves as police officers. The door was answered by the appellant who then attempted to slam the door in the officers’ faces. He ran away from the door and the police then entered the appellant’s house by opening the unlocked door without force or destruction of property.
The United States Supreme Court in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), ruled that police may not enter a dwelling, without the resident’s permission, to make a routine felony arrest.
“Justice Stevens, writing for the majority, noted it was ‘a “basic principle of Fourth Amendment law” that searches *699 and seizures inside a home without a warrant are presumptively unreasonable/ _ The Court reasoned that ...
“The Fourth Amendment protects the individual’s privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual’s home — a zone that finds its roots in clear and specific constitutional terms: ‘The right of the people to be secure in their ... houses ... shall not be violated.’ ... In terms that apply equally to seizures of property and to seizures of person, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.”
2 W. LaFave, Search and Seizure § 6.1(b) (2d ed. 1987). (Emphasis added.) However, as the court in Payton noted, there were no exigent circumstances present in that case. Police may enter a home to make a felony arrest without a warrant and without consent of the resident only if “exigent circumstances” are present. See United States v. Newbern, 731 F.2d 744 (11th Cir.1984); United States v. Roper, 681 F.2d 1354 (11th Cir.1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). (For a thorough discussion of the law since Payton, see J. Harbaugh, Knock on Any Door — Home Arrests After Payton and Steagald, 86 Dick.L.Rev. 191 (1982).)
As Judge Bowen stated in Musgrove v. State, 519 So.2d 565 (Ala.Cr.App.), aff’d, 519 So.2d 586 (Ala.1986), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988):
“ ‘[T]he ultimate test for determining whether exigent circumstances exist justifying a warrantless entry “is whether there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant.” ’ United States v. Cresta, 592 F.Supp. 889, 901 (D.Maine, 1984). ‘The term “exigent circumstances,” in conjunction with an arrest in a residence, refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.' United States v. Flickinger, 573 F.2d 1349, 1355 (9th Cir.), cert. denied, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978), overruled on other grounds, United States v. McConney, 728 F.2d 1195 (9th Cir.), cert. denied, McConney v. United States, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). ‘The exigent circumstances doctrine recognizes several common situations where the time consuming resort to a neutral magistrate for an arrest or search warrant is unnecessary, for example: hot pursuit, ... fleeing suspect, ... danger to arresting officers or the public from the suspect or the contents of an container, ... mobility of the vehicle, ... or mobility of containers which could not be detained without thwarting efforts to discover other con-spirators_’ United States v. Kreimes, 649 F.2d 1185, 1192 (5th Cir.1981) (citations omitted).”
Musgrove, 519 So.2d at 572. See also Bush v. State, 523 So.2d 538 (Ala.Cr.App.1988).
In this case, the appellant himself answered the door, saw the police and attempted to slam the door in their faces. The appellant was also known to carry a weapon. This is sufficient exigent circumstances to make the warrantless entry into the appellant’s home to effectuate the arrest lawful.
Ill
The appellant next argues that the trial court erred in allowing a statement made by him to be received into evidence. Specifically, the appellant maintains that because he requested to speak to his parents prior to making the statement and his parents were not notified of his request, that this violated his rights, as guaranteed by Rule 11(A), A.RJuv.P., were violated.
According to Rule 11(A), A.R.Juv. P., a juvenile must be informed of certain rights once he has been arrested and prior to the making of any statement. The juvenile must be advised of his Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 *700 L.Ed.2d 694 (1966) rights. He must be told that he has a right to communicate with his parents. If these rights are not communicated to the juvenile, then any statements made by him are inadmissible in any subsequent proceedings.[1] See Chambers v. State, 497 So.2d 607 (Ala.Cr.App.1986).
The appellant does not dispute the fact that he was informed of his rights under Rule 11(A), A.R.Juv.P. The appellant himself stated during his testimony that he was read his rights on more than one occasion prior to his making the statement to police.
The appellant questions the voluntariness of the statement he gave while in police custody.
“Generally, it is in the province of the trial judge to first determine the volun-tariness of a statement.... When the evidence on the circumstances surrounding the appellant’s confession is conflicting on voir dire, the trial judge must determine its admissibility.... Where the trial judge finds on conflicting evidence that the confession was voluntarily made, its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence.”
Malone v. State, 452 So.2d 1386, 1389 (Ala.Cr.App.1984).
The appellant stated at the hearing that when the officers were reading his rights to him, he told his sister to call their mother. However, this point is in conflict. The five police officers who were present when the appellant was arrested in his house testified at the hearing. Four officers did not hear the appellant say anything about the police calling his mother. One officer stated that he knew something was said about the mother but that he did not know what it was. Several officers testified that the police had the sister call the mother so that they could talk with her.
When the trial court denied the appellant’s motion to suppress the statement, the court found that the testimony was conflicting and that it was making a ruling based on the credibility of the witnesses and the evidence presented. The court noted that four officers had said that the appellant did not make any request that his mother be called. The other remaining officer said that he thought something was said about the mother. Besides this initial incident, there is absolutely no evidence in the record that the appellant, during the time he was in the presence of police officers, ever mentioned his mother. In fact, the appellant stated during his testimony that he did not mention his mother any more after that initial incident. The trial court, after weighing the evidence, found that the appellant did not invoke his right to speak to his parents. The record supports the juvenile court’s ruling. See Scott v. State, 501 So.2d 1273 (Ala.Cr.App.1986).
The appellant further argues that his statement should have been suppressed because he did not know that he could ultimately be transferred to the Circuit Court for Jefferson County to be tried as an adult when he waived his right to remain silent. Under existing law in Alabama, there is no requirement that a juvenile be told, prior to making a statement while in police custody, that he can be transferred to circuit court to be tried as an adult. See Rule 11(A), A.R.Juv.P. As stated above, the juvenile must be informed of his Miranda rights and told that he has the option to communicate with his parents. See Rule 11(A), A.R.Juv.P.
However, as Judge Bowen stated in Parker v. State, 351 So.2d 927 (Ala.Cr.App.), writ quashed, 351 So.2d 938 (Ala.1977):
“A confession is not inadmissible, in the absence of a statutory provision to the contrary, merely because the person making it is a minor.
[[Image here]]
“In West v. United States, 399 F.2d 467 (5th Cir.1968), the court set forth the circumstances to be considered in deter *701 mining the validity of a minor’s waiver of Miranda rights:
“ ‘(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogation; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused had repudiated an extra-judicial statement at a later date.’ 399 F.2d at 469.”
Parker, 351 So.2d at 932-35.
The totality of the circumstances test determines whether there was an effective waiver. See Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Parker.
Here, the appellant was 15 years old at the time of the offense and was in the eighth grade. His Minnesota Multipha-sic Personality Inventory, was in the lower normal range. He had previously been charged with the theft of an automobile. It appears from the transcript that the appellant understood his rights and that he signed a waiver form to that effect. There is no evidence that the appellant was coerced. In fact, he testified that he was not threatened or promised anything in order to confess.
The appellant was - told that he could speak with his parents. The appellant made his statement within two hours after being taken into custody. He was not formally charged with murder when he made the statement. After evaluating the totality of the circumstances, we conclude that the juvenile court did not err in holding that the appellant had made a valid waiver of his rights before making his confession.
IV
The appellant next asserts that his mother’s consent to search her house was not freely and intelligently given and, consequently, any items recovered as a result of the search should have been suppressed. A small caliber handgun, a cartridge, and some of appellant’s clothing were seized as a result of the search of the appellant’s residence.
The appellant has no standing to challenge the seizure of the weapon found in his mother’s bedroom. As this court recently stated in Williams v. State, [Ms. 89-191, June 14, 1991], 1991 WL 119358 (Ala.Cr.App.1991):
“When a motion to suppress evidence in a criminal case is based on the ground that the evidence was obtained in violation of the Fourth Amendment, one issue is whether the movant has standing to assert the claim and to seek the remedy of exclusion. See LaFave, 4 Search and Seizure § 11.3 (2d ed. 1987). The rights afforded protection by the Fourth Amendment are personal rights. See Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, [974], 19 L.Ed.2d 1247 (1967). To show that a party has standing to object to a search, the party must have a possessory interest in the premises searched. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978).
[[Image here]]
“ ‘A defendant must also establish a legitimate expectation of privacy in the particular area searched in order for a Fourth Amendment challenge to be allowed.’ United States v. Meyer, 656 F.2d 979, 981 (5th Cir.1981).”
Williams, 1991 WL 119358, *7-8.
The appellant had no legitimate expectation of privacy in his mother’s bedroom where the gun was found. Thus, the appellant had no standing to challenge the search.
No evidence of coercion or fraud appears. The following occurred:
“[Officer Braden]—I told her [the appellant’s mother] that we were investigating *702 an offense and that there was information that led me to believe that C.B. was involved in it and there was information that made me believe there may be evidence in that apartment which would assist us in the investigation of the offense.
I, at that time asked her if we could look through her apartment.
“[Prosecutor] — All right. And how did— and what did Ms. [J.] respond?
“[Braden] — She said, that’s fine. I said, well — and in that conversation, I told her that we would need a release in order to look through the apartment. “[Prosecutor] — All right. And how was that release secured?
“[Braden] — I handed her a piece of paper, and I said if you would sign us out— fill us out a receipt, I mean, a release, you know, we’ll look through the apartment. And she said, she said something to the effect of, well, can you write it or something like that, or — and I said yes, and I wrote it for her and had her sign it.”
The appellant’s mother was also informed by others that the police were investigating a murder and that her son was a suspect. There was sufficient testimony for the trial court to conclude that the consent was freely given.
For the reasons given in part I of this opinion, this cause is remanded to the Juvenile Court for Jefferson County. Due return should be filed with this court within 90 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

. Before an accused’s confession can be received into evidence against him, both volun-tariness and a Miranda predicate must be shown. Whitlow v. State, 509 So.2d 252 (Ala.Cr.App.1987); Malone v. State, 452 So.2d 1386 (Ala.Cr.App.1984).